1   BILL LOCKYER, Attorney General
        of the State of California
2   TOM GREENE
        Chief Assistant Attorney General
3   THEODORA BERGER
        Senior Assistant Attorney General
4   CLAUDIA POLSKY (State Bar No. 185505)
        Deputy Attorney General
5   1515 Clay St.
    Oakland, CA 94612-0550
6   Phone: (510) 622-2112
    Fax: (510) 622-2270
7
    Attorney for Plaintiffs California Department
8   of Toxic Substances Control, California Hazardous
    Substance Account, and California Hazardous Substance
9   Cleanup Fund

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  | STATE OF CALIFORNIA DEPARTMENT OF | No. CV-F-96-6055 AWI LJO |
    | TOXIC SUBSTANCES CONTROL, et al. | |

14  | | **CONSENT DECREE** |
    | Plaintiffs, | **RESOLVING ALL CLAIMS** |
15  | | **AGAINST ALL DEFENDANTS** |

16    v.

17
18  COAST WOOD PRESERVING, INC., AND JOYCE
    LOGSDON,
19                                  Defendants.
20

21

22                      **I.  INTRODUCTION**

23          1.      Plaintiffs State of California Department of Toxic Substances Control ("DTSC"),

24  the California Hazardous Substances Account, and the California Hazardous Substance Cleanup

25  Fund ("Plaintiffs") filed a complaint in this matter on September 16, 1996 pursuant to sections

26  107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act,

27  42 U.S.C. section 9601 et seq. ("CERCLA"), against three parties: Coast Wood Preserving, Inc.

28  ("Coast Wood Preserving"), Harold Logsdon, and Joyce Logsdon.  Plaintiffs' complaint seeks

                                    1.

the recovery of costs incurred or to be incurred by the Plaintiffs in responding to releases and/or threatened releases of hazardous substances at or in connection with the approximately eight-acre property located at Plant Road and Taylor Drive in Ukiah, California ("Coast Wood Site" or "Site").

2.    Plaintiff DTSC is the California state agency with primary jurisdiction over the actions taken in response to the release and threatened release of hazardous substances at and from the Site.  Plaintiff California Hazardous Substances Account is an account in California's General Fund administered by DTSC.   Plaintiff California Hazardous Substance Cleanup Fund is a fund in California's Treasury, monies from which the California Legislature appropriates to DTSC in part to pay the costs of environmental removal and remediation actions.

3.    Plaintiffs' complaint alleges, in relevant part, that:

a.  Coast Wood Preserving owned and/or operated a wood-preserving facility of approximately eight acres in Ukiah, California, at which or from which releases and/or threatened releases of hazardous substances have occurred.

b.    Defendants Harold and Joyce Logsdon were owners or co-owners of the property on which Coast Wood Preserving is situated and/or operated the facilities at which the wood preserving operations took place, and at which or from which releases/threatened releases occurred.  Defendant Harold Logsdon was additionally the President of Coast Wood Preserving and exercised, or had the ability to exercise, control over operations that resulted in releases and/or threatened releases.

c.    Since approximately 1971, the Coast Wood Preserving facility has used hazardous substances in its wood-treatment operation, including water-based solutions containing hexavalent chromium, copper, and arsenic.

d.    Removal and remedial action was and is necessary to remove and remedy the hazardous substances released and threatened to be released at and from the Coast Wood Site.

e.  DTSC has incurred, and will continue to incur, response costs for oversight activities in response to the release and/or threatened release of hazardous substances at

2.

No. CV-F-96-6055-AWI-LJO

1    the Site.  Those activities have included and will include oversight of:  soil sampling and

2    groundwater monitoring at the Site; interim remedial measures while Coast Wood

3    Preserving is still in operation;  remediation of the Site once Coast Wood Preserving

4    ceases operation; and ongoing operation and maintenance of the Site.

5          4.      In 1994, the U.S. Environmental Protection Agency (U.S. EPA) and defendant

6    Coast Wood Preserving entered into an Administrative Order on Consent (AOC) that, *inter alia,*

7    required Coast Wood Preserving to establish and fund a $500,000 Trust Fund to pay for

8    estimated future costs of site clean-up.  The AOC contemplated that DTSC would be the primary

9    beneficiary, and U.S. EPA the secondary beneficiary.  The AOC is attached as Exhibit A hereto.

10          5.      In July 1995, Coast Wood Preserving entered into a Custodian Fund Agreement

11    with Banker's Trust Company of New York City, New York to create and provide assets to the

12    Trust Fund.  The Trust Fund was subsequently transferred to Deutsche Bank, also of New York

13    City, New York.  The Custodian Fund Agreement is attached as Exhibit B hereto.

14          6.      In 1997, Plaintiffs and Defendants reached a partial settlement pertaining to

15    DTSC's ongoing oversight costs at the Coast Wood Site, pursuant to which Defendants paid

16    DTSC's past cost bills to June 30, 1997.

17          7.      Defendant Harold Logsdon has since died.  Pursuant to a creditor's claim,

18    Plaintiffs in 2003 received $38,000 from Mr. Logsdon's estate, resolving his personal liability in

19    this matter.  Coast Wood Preserving and Joyce Logsdon remain as the Defendants to this action.

20          8.      DTSC  will continue to incur future response costs in conducting or overseeing

21    removal and/or remedial activities in response to the release and threatened release of hazardous

22    substances at and from the Coast Wood Site.

23          9.      The most recent cost estimate prepared by Coast Wood Preserving's technical

24    consultants ("Final Soil and Groundwater Remediation Cost Estimate, Coast Wood Preserving

25    Site, Ukiah, California," dated August 1, 2005, hereafter "2005 Cost Estimate") indicates that

26    complete site clean-up will cost approximately $1.5 million.  This figure includes the cost of

27    regulatory oversight by DTSC and, consistent with industry practice, includes a 10%

28    "contingency" in the face of uncertainty regarding the full extent of contamination at the Site.

3.

10.     Slightly less than half of the estimated future costs are secured by the existing Trust Fund.  The remaining costs are presently unsecured.

11.   Coast Wood Preserving and Plaintiffs agree to settle this action without further litigation, and without the admission or adjudication of any issue of fact or law.

12.   Coast Wood Preserving and Plaintiffs represent, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith, that settlement of this matter will avoid prolonged and expensive litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

13.   Each of the parties to this Consent Decree represents and acknowledges that, in deciding whether to enter into this Consent Decree, it has not relied on any statement of fact, statement of opinion, or representation, express or implied, made by any other party.

THEREFORE, the Court, with the consent of the parties to this Consent Decree, hereby ORDERS, ADJUDGES, and DECREES, as follows:

## II.  DEFINITIONS

14.     Unless otherwise expressly provided herein, all terms used in this Consent Decree that are defined in CERCLA, or in the regulations promulgated under CERCLA, shall have the meaning assigned to them in the statute or regulations.

15.     "Administrative Order on Consent"  or "AOC" shall mean the 1994 Administrative Order on Consent (CERCLA Docket No. 95-06), issued by the U.S. EPA to Defendant Coast Wood Preserving, for the purposes of funding future response costs at the Coast Wood Site.  The AOC is attached as Exhibit A hereto.

16.     "Coast Wood Preserving" shall mean Defendant Coast Wood Preserving, Inc.

17.     "2005 Cost Estimate" shall mean the Final Soil and Groundwater Remediation Cost Estimate, Coast Wood Preserving Site, Ukiah, California," dated August 1, 2005.

18.     "Defendants' representative" shall mean the representative of Coast Wood Preserving designated as such in the Custodian Fund Agreement described *infra*.

19.     The "Coast Wood Site" or "Site" shall mean the approximately eight-acre property located at Plant Road and Taylor Drive in Ukiah, California and the full extent of

4.

1    contamination at or from the property.

2          20.    "Custodian Fund Agreement" shall mean the agreement executed in July 1995

3    between Coast Wood Preserving and Banker's Trust Company (custodian), attached as Exhibit B

4    hereto.  The Custodian Fund Agreement established a Trust Fund and custodian therefor, as

5    required by the AOC.  (Exh. A, ¶¶ 6, 9.)

6          21.    "DTSC" shall mean the State of California Department of Toxic Substances

7    Control, and its predecessors and successors.

8          22.    "Parties" shall mean the Plaintiffs and Coast Wood Preserving.

9          23.    "Plaintiffs" shall mean the State of California Department of Toxic Substances

10   Control, the California Hazardous Substance Account, and the California Hazardous Substance

11   Cleanup Fund.

12         24.    "Response Costs," shall mean all costs of "removal," "remedial action," or

13   "response" (as those terms are defined by section 101 of CERCLA, 42 U.S.C. § 9601), incurred

14   or to be incurred by plaintiffs in response to the release or threatened release of hazardous

15   substances at or from the Coast Wood Site.  Said terms shall include, but not be limited to, direct

16   labor costs; contractor, consultant and expert costs; travel and any other out-of-pocket expenses;

17   the costs of identifying, developing evidence against, and pursuing claims against persons or

18   entities liable for the release or threatened release of hazardous substances at or from the Coast

19   Wood Site; indirect costs; oversight costs; applicable interest charges; and attorneys' fees.

20         25.    "Trust Fund" means the existing custodial fund established pursuant to the

21   Administrative Order on Consent.  As of the date of entry of this Consent Decree, this Trust Fund

22   is titled the Coast Wood Preserving Trust Fund, is held in escrow by Deutsche Bank Trust

23   Company Americas (Trust & Security Company Services) in New York City, New York, and is

24   exclusively invested in U.S. Treasury securities.

25                              **III.  JURISDICTION**

26         26.    The Court has subject matter jurisdiction over the matters alleged in this action

27   pursuant to 28 U.S.C. section 1331 and 42 U.S.C. section 9613(b), and personal jurisdiction over

28   the Plaintiffs and Defendants in this action.  Venue is appropriate in this district pursuant to 28

1  U.S.C. section 1391(b) and 42 U.S.C. section 9613(b).  The Court has the authority to enter this

2  Consent Decree as an order of the Court.

3  ### IV.  PARTIES BOUND

4      27.    This Consent Decree shall apply to, be binding upon, and inure to the benefit of

5  the Parties, and their representatives, successors, heirs, and assigns.

6  ### V.  SETTLEMENT OF DISPUTED CLAIMS

7      28.    This Consent Decree resolves Coast Wood Preserving's alleged liability under

8  section 107 of CERCLA (42 U.S.C. § 9607), in exchange for its agreement to fund remaining

9  clean-up costs at the Coast Wood Site, and to secure a specified portion of future clean-up

10  expenses.

11      29.    By entering into this Consent Decree, Coast Wood Preserving resolves Plaintiffs'

12  claims against it with respect to the releases and/or threatened releases of hazardous substances at

13  the Site.

14      30.    This Consent Decree resolves the personal liability of nonsignatory defendant

15  Joyce Logsdon, subject to Plaintiffs' reservation of rights in Section XI of this Consent Decree.

16  This Decree assigns no obligations to Ms. Logsdon.

17      31.    For the purposes of this Consent Decree, Coast Wood Preserving does not admit

18  any of the allegations of the Complaint.  Nothing in this Consent Decree shall be construed as an

19  admission of any issue of law or fact or of any violation of law.

20      32.    Except as otherwise expressly provided in this Consent Decree, this Consent

21  Decree shall not prejudice, waive, or impair any right, remedy or defense that Defendants may

22  have in any other legal proceeding.

23      33.    Except as otherwise expressly provided in this Consent Decree, the Parties

24  consent to, and shall not challenge, entry of this Consent Decree or this Court's jurisdiction to

25  enter and enforce this Consent Decree.

26      34.    Upon approval and entry of this Consent Decree by the Court, this Consent

27  Decree shall constitute a final judgment between and among the Parties hereto.

28      35.    Plaintiffs' failure to enforce any provision of this Consent Decree shall not be

6.

No. CV-F-96-6055-AWI-LJO

1    deemed a waiver of such provision, or in any way affect the validity of this Consent Decree.

2    Such failure also shall not preclude Plaintiffs from later enforcing the same or any other

3    provision of this Consent Decree.

4                                   **VI.  SITE CLEAN-UP**

5           36.    <u>Soil remediation.</u>  Defendants shall complete, by the end of calendar year 2006, all

6    interim soil remediation activities outlined in the 2005 Cost Estimate, even if actual costs exceed

7    estimated costs.  This includes soil remediation under the mix tank farm area and the trench area,

8    as detailed in the 2005 Cost Estimate.

9           37.    <u>Groundwater remediation.</u>  Defendants shall conduct groundwater treatment by

10   injecting reducing agents into groundwater as needed, and shall conduct the groundwater

11   monitoring detailed in the 2005 Cost Estimate.

12          38.    <u>Documentation.</u>  Defendants shall provide to Plaintiffs, upon request, copies of all

13   documents and information within their possession or control or that of their agents relating to

14   releases and/or threatened releases of hazardous substances at the Site and activities at the Site,

15   including but not limited to, sampling, analysis, correspondence, or other documents relating to

16   removal, remedial, or response actions at the Site.

17          39.    <u>Triannual cost estimate revisions.</u>  Coast Wood Preserving and DTSC shall

18   review the costs of site cleanup every three years, running from the date of entry of this Consent

19   Decree.  The Parties recognize that cost estimates performed in the future may exceed the figures

20   in the 2005 Cost Estimate.  Nothing in this Consent Decree shall be construed to limit Coast

21   Wood Preserving's liability for clean-up costs in excess of the amount predicted in the 2005 Cost

22   Estimate.

23          40.    <u>Force majeure.</u>  Coast Wood Preserving shall cause all work required under this

24   Consent Decree to be performed within the time limits set forth in this Consent Decree unless an

25   extension is approved by DTSC or performance is delayed by events that constitute an event of

26   force majeure.  For purposes of this Consent Decree, an event of force majeure is an event arising

27   from circumstances beyond the control of Coast Wood Preserving that delays performance of any

28   obligation under this Consent Decree, provided that Coast Wood Preserving has undertaken all

                                            7.

1   appropriate planning and prevention measures to avoid any foreseeable circumstances.  Increases

2   in cost of performing the work specified in this Consent Decree shall not be considered

3   circumstances beyond the control of Coast Wood Preserving.  For purposes of this Consent

4   Decree, events that constitute a force majeure shall include, without limitation, events such as

5   acts of God; war; civil commotion; unusually severe weather; labor difficulties; shortages of

6   labor, materials or equipment; government moratoriums; delays in obtaining necessary permits

7   due to action or inaction by third parties; earthquake; fire; flood; or other casualty.  In addition,

8   any unavoidable delay in obtaining the right of access, if required to perform work under this

9   Consent Decree, for Coast Wood Preserving to any area not owned or controlled by Coast Wood

10  Preserving shall also constitute an event of force majeure.

11  Delay caused by an event of force majeure shall be deemed not to be a violation of this

12  Consent Decree, and this delay shall not be counted in determining the time during which such

13  work shall be completed, or such act performed, whether such time be designated by a fixed date,

14  a fixed time or a reasonable time, and such time shall be deemed to be extended for the effective

15  period of delay equal to the actual days lost attributable to the effect of the event of force

16  majeure.  Coast Wood Preserving shall notify DTSC in writing immediately after the occurrence

17  of the force majeure event.  Such notification shall describe the anticipated length of the delay,

18  the cause or causes of the delay, the measures taken and to be taken by Coast Wood Preserving to

19  minimize the delay and the timetable by which these measures will be implemented.  If DTSC

20  does not agree that the delay is attributable to a force majeure, then the matter may be referred to

21  the Court for resolution.

22  ## VII.  TRUST FUND PAYMENTS

23  41.   Immediate payment.  Coast Wood Preserving agrees to deposit $150,000 in the

24  Trust Fund within thirty (30) days of entry of this Consent Decree, to secure the costs of

25  groundwater monitoring in Years 6 through 10 of the agreed-upon ten-year monitoring program.

26  42.   Staged payments. Coast Wood Preserving agrees to deposit an additional

27  $162,000 in the Trust Fund (for post-closure costs) over a five-year period, according to the

28  following schedule:

No. CV-F-96-6055-AWI-LJO

1          a.     Coast Wood Preserving shall deposit the initial payment (Year 1), in the

2 amount of $20,000, within ninety (90) days of entry of this Consent Decree.

3          b.     Coast Wood Preserving shall contribute annually to the Trust Fund, on or

4 before the anniversary of the initial payment, a sum of $25,000 (Year 2); $32,000 (Year 3);

5 $42,500 (Year 4), and $42,500 (Year 5).

6     43.   Trust Fund administrative costs.  Coast Wood Preserving shall pay 50% of the

7 annual costs of Trust Fund administration and shall inform DTSC in writing of said payment.

8     44.   Payments.  Coast Wood Preserving's payments to the Trust Fund may be made by

9 the most convenient means, including but not limited to electronic fund transfers.  Any payments

10 by check must be made by certified or cashier's check made payable to *Coast Wood Preserving*

11 *Trust – Account #15278*, and bear on their face the docket number of this proceeding.  Any

12 payments by check shall be sent to:

          Deutsche Bank Trust Company Americas
          60 Wall Street, 37th fl.
          New York, N.Y. 10005
          MS: NYC60-2710

A copy of each check shall be sent to:

          Barbara Cook,
          Site Mitigation Branch Chief
          California Department of Toxic Substances Control, Region 2
          700 Heinz Ave., Suite 200
          Berkeley, CA  94710

     45.   Oversight costs.  Coast Wood Preserving shall pay DTSC directly for DTSC's

oversight costs on a quarterly basis, as billed.

     46.   Late payments.  In the event of late payments to the Trust Fund or to DTSC, Coast

Wood Preserving shall be liable for payment of accrued interest, pursuant to California Health

and Safety Code section 25360.1.

### VIII.  TRUST FUND DISBURSEMENTS

     47.   Trust Fund administrative costs.  The 50% of Fund administrative costs not paid

by Coast Wood Preserving may be drawn from the Trust Fund corpus.  Coast Wood Preserving's

representative shall inform DTSC in writing of said payment.  Coast Wood Preserving's

9.

1   representative shall also inform DTSC in writing of any actual or proposed increase in annual

2   administrative fees for Trust Fund maintenance.

3       48.   Trust Fund taxes on earnings.  Plaintiffs shall allow the Trust Fund to pay federal

4   and state income tax on interest earnings where taxable.  Defendants' representative shall inform

5   DTSC in writing of all tax payments.

6       49.   Reimbursement for groundwater monitoring.  Beginning on the sixth anniversary

7   of the entry of this Consent Decree, Coast Wood Preserving may annually submit to the Trust

8   Fund requests for reimbursement of groundwater monitoring costs on an as-incurred basis.  In

9   Year 6 (the initial year in which Coast Wood may draw upon the Trust Fund for such monitoring

10  costs), Coast Wood Preserving may, with DTSC's prior written consent, withdraw up to a

11  maximum of $30,000 of actual costs.   In each of Years 7 through 10, Coast Wood Preserving

12  may, with DTSC's prior written consent, withdraw for actual monitoring costs up to $30,000 per

13  year, plus any authorized sum unrequested in prior years. (For example: If Coast Wood

14  Preserving withdraws only $27,000 from the Trust Fund in Year 8, it may withdraw up to

15  $33,000 in Year 9.)  If actual groundwater monitoring costs in any year exceed the amount that

16  Coast Wood Preserving is authorized to withdraw from the Trust Fund, Coast Wood Preserving

17  must pay the excess out of non-Trust Fund sources.

18          **IX.  TRUST FUND MANAGEMENT AND DURATION**

19      50.   Consent required for changes in custodian or investment vehicle.  Coast Wood

20  Preserving agrees that the Trust Fund shall not be moved from Deutsche Bank to any other non-

21  FDIC-insured institution without prior written DTSC approval.  (*See* AOC, Exh. A, ¶ 9(d).)

22  Coast Wood Preserving further agrees that Trust Fund investments and interest, currently

23  invested exclusively in U.S. Treasury securities, shall not in whole or part be moved into any

24  other securities that are not either insured, or, if federally issued, fixed-income, without prior

25  written DTSC approval.   (*See* AOC, Exh. A, ¶ 9(c).)

26      51.   Extension of Trust Fund until clean-up completion.  The 1995 Custodian Fund

27  Agreement contemplates automatic termination of the Trust Fund in July 2016.  (Exh. B at ¶ 4.4).

28  Unless, prior to July 2016, DTSC has expressly informed Coast Wood Preserving in writing that

10.

no further Site expenditures are necessary, Coast Wood Preserving hereby agrees to enter into a new Custodian Fund Agreement with substantially identical requirements on or before the date the existing Trust Fund is terminated.  The new agreement must expressly designate DTSC as the primary beneficiary of the Trust Fund, and the U.S. EPA as the secondary beneficiary, and must expressly state that Coast Wood Preserving has no interest in the Trust Fund that may be subject to creditors' claims.

## X.  COVENANT NOT TO SUE BY PLAINTIFFS

52.     In consideration of the actions that will be performed and the payments that will be made by Coast Wood Preserving under the terms of this Consent Decree, and except as expressly provided in Section XI (Reservation of Rights) of this Consent Decree, Plaintiffs covenant not to sue Defendants pursuant to CERCLA, the California Hazardous Substances Account Act, California Health and Safety Code section 25300 *et seq*., or any other statute, regulation, or common law theory to: (1) recover Plaintiffs' Response Costs; or (2) require removal or remedial activities in response to the release or threatened release of hazardous substances at or from the Site.   This covenant not to sue is conditioned upon the complete and satisfactory performance by Coast Wood Preserving of all of its obligations under this Consent Decree.

53.     The covenant not to sue in this Consent Decree does not pertain to any matters other than those expressly specified therein.  Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights, claims, and causes of action Plaintiffs may have against Defendants with respect to all other matters.

54.     This covenant not to sue extends only to Defendants and does not extend to any other person.

## XI.  RESERVATION OF RIGHTS

55.     Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended or shall be construed to preclude Plaintiffs from exercising their authority under any law, statute or regulation.  Furthermore, except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to preclude any state

11.

agency, department, board or entity, other than Plaintiffs, or any federal or local agency, department, board or entity, from exercising its authority under any law, statute or regulation.

56.   Notwithstanding any other provision in the Consent Decree, Plaintiffs reserve the right to institute proceedings in this action or in a new action, seeking to compel Defendants to perform additional response activities at the Site and/or to reimburse the Plaintiffs for additional Response Costs, if:

(a)   conditions previously unknown to Plaintiffs, for which Defendants are liable under any statute or law, are discovered at the Site after the entry of the Consent Decree, and these conditions indicate that a hazardous substance has been or is being released into the environment; or

(b)   Coast Wood Preserving, or its successors, representatives, or assigns, fail to comply with Coast Wood Preserving's obligations under the Consent Decree.

57.   The Plaintiffs' Covenants Not to Sue (Section X), above, does not pertain to the following matters:

(a)   Failure of Coast Wood Preserving to meet the requirements of this Consent Decree;

(b)   Damage to natural resources, as defined in Section 101(6) of CERCLA, 42 U.S.C. section 9601(6), including all costs incurred by any natural resources trustees;

(c)   Defendants' introduction of any hazardous substance, pollutant, or contaminant to the Site in the future;

(d)   Future overt acts by Defendants that cause the exacerbation of the hazardous conditions existing at the Site;

(e)   Claims by third parties alleging personal injury or property damage; and

(f)   Claims based on liability arising from the past, present, or future disposal of hazardous substances at sites or locations other than the Site.  This subsection (g), however, shall not limit the covenants not to sue in this

12.

Decree that apply to (i) claims arising from the passive migration of hazardous substances from the Site; or (ii) claims based on the lawful shipment of hazardous substances from the Site after the Effective Date of this Consent Decree.

### XII.  COVENANT NOT TO SUE BY SETTLING DEFENDANT

58.     Coast Wood Preserving covenants not to sue, and agrees not to assert any claims or causes of action against, Plaintiffs, or their contractors or employees, that arise out of the transaction or occurrence that is the subject matter of Plaintiffs' Complaint, or for any injuries, losses, costs, or damages caused or incurred as a result of the performance of the requirements of this Consent Decree.

### XIII.  CONTRIBUTION PROTECTION

59.     As of the Effective Date of this Consent Decree, and provided that Coast Wood Preserving performs all of its obligations under this Consent Decree, Defendants shall be entitled to protection against all claims for contribution, pursuant to section 113(f) of CERCLA, 42 U.S.C. section 9613(f), for "Matters Addressed" by this Consent Decree, to the fullest extent permitted by law.  The "Matters Addressed" by this Consent Decree are all response actions taken or to be taken, and all Response Costs incurred or to be incurred by Plaintiffs or any other person or entity, in response to the release or threatened release of hazardous substances at or from the Site.

60.     This Consent Decree shall, to the fullest extent permitted by law, prevent Defendants from being held liable to any third person or entity not a party to this Consent Decree for any claims for contribution (without regard to how the claim for contribution is described or denominated), indemnity or the like, asserted under any federal, state, or common law, arising out of or related to any response, cleanup, removal, or remedial actions or costs, which such third persons or entities have taken, incurred, or defrayed or may take, incur, or defray at any time in response to the release or threatened release of hazardous substances at or from the Site.

61.     Except as otherwise specifically provided, nothing in this Consent Decree is intended, or shall be construed, to waive, release or otherwise affect any right, claim, or cause of

13.

No. CV-F-96-6055-AWI-LJO

1  action held by Plaintiffs or Defendants against, or to provide a covenant not to sue to, any third

2  person or entity not a party to this Consent Decree, or to in any way limit, restrict, or impair the

3  right of Plaintiffs or Defendants to assert rights, claims, causes of actions and defenses against

4  any third person or entity not a party to this Consent Decree, including, without limitation, the

5  right to seek payment, reimbursement, contribution, or indemnity from such persons or entities

6  for obligations incurred or to be incurred under this Consent Decree.  The Parties specifically

7  reserve any rights, claims, or causes of action they might have against any third person or entity

8  not a party to this Consent Decree.

9  **XIV.  NOTIFICATION**

10       62.     Except as otherwise provided herein, notification to or communication among the

11  Parties as required by, or in furtherance of compliance with, this Consent Decree, shall be

12  addressed as follows:

13  For Plaintiffs:

14       Barbara Cook
         Site Mitigation Branch Chief
15       California Department of Toxic Substances Control, Region 2
         700 Heinz Ave., Suite 200
16       Berkeley, CA  94710

17

18  For defendant Coast Wood Preserving, if by mail:

19       Robert Schmidt
         Coast Wood Preserving, Inc.
         P.O. Box 1805
20       Turlock, CA 95381

21       Coast Wood Preserving
         P.O. Box 673
22       Ukiah, CA 95482

23       If by courier:

24       Robert Schmidt
         Coast Wood Preserving, Inc.
25       600 West Glenwood Ave.
         Turlock, CA 95380
26
         Coast Wood Preserving
27       3150 Taylor Drive
         Ukiah, CA 95482
28

14.
No. CV-F-96-6055-AWI-LJO

1

2                    **XV.  MODIFICATION OF CONSENT DECREE**

3          63.     This Consent Decree may be modified only upon the written approval of the

4  Parties and the Court.

5                              **XVI.  INTEGRATION**

6          64.     This Consent Decree, including the exhibits incorporated herein by reference,

7  constitutes the entire agreement among the Parties and may not be amended or supplemented

8  except as provided for in this Consent Decree.

9                            **XVII.  PUBLIC COMMENT**

10         65.     This Consent Decree was subject to a public comment period of at least 30 days.

11 Notice of the proposed Consent Decree was published in the California Regulatory Notice

12 Register (Vol. no. 20-Z) on May 19, 2006, and was open for public comment through June 19,

13 2006.  The parties received no comments disclosing facts or considerations suggesting that this

14 Consent Decree is inappropriate, improper, or inadequate.

15                    **XVIII.  RETENTION OF JURISDICTION**

16         66.     The parties shall jointly move the court for an order dismissing this action pursuant

17 to Federal Rule of Civil Procedure 41(a)(2); their motion shall request that the order expressly

18 indicate the court's retention of jurisdiction to enforce the terms of this Consent Decree.

19                           **XIX.  EFFECTIVE DATE**

20         67.     The Effective Date of this Consent Decree shall be the date of entry of this

21 Consent Decree by this Court.

22                            **XX.  COUNTERPARTS**

23         68.     This Consent Decree may be executed in two or more counterparts, each of which

24 shall be deemed an original, but all of which together shall constitute one and the same

25 instrument.

26                             **XXI.  SIGNATORIES**

27         69.     Each signatory to this Consent Decree certifies that he or she is fully authorized

28 by the Party he or she represents to enter into this Consent Decree, to execute it on behalf of the

                                        15.

1  Party represented and legally bind that Party.

2  **XXII.  APPROVALS OF PARTIES**

3  Plaintiffs consent to this Consent Decree by their duly authorized representatives as

4  follows:

5

6  STATE OF CALIFORNIA DEPARTMENT
   OF TOXIC SUBSTANCES CONTROL and HAZARDOUS
   SUBSTANCE ACCOUNT

7

8  Dated: July 25, 2006          By: _____ /S/ _____
                                 Barbara Cook
9                                Site Mitigation Branch Chief
                                 California Department of Toxic Substances Control,
10                               Site Mitigation and Brownfields Reuse Program

11                               _____

12  Defendants consent to this Consent Decree as follows:

13

    Dated: July 21, 2006          By: _____ /S/ _____
14                                 Michael Logsdon
                                   President, Coast Wood Preserving, Inc.
15

16                               **ORDER**

17

18  IT IS SO ORDERED.

19  **Dated:    August 15, 2006**          _____ **/s/ Anthony W. Ishii** _____
20  0m8i78                                 UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

No. CV-F-96-6055-AWI-LJO